IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED SPECIALTY INSURANCE        *
COMPANY, INDEMNITY NATIONAL       *
INSURANCE COMPANY,                *
                                  *
        Plaintiffs,               *
                                  *        Civil Action No. 2:26-cv-238
v.                                *
                                  *
                                  *
ARBOUR VALLEY MANAGEMENT, LLC,    *
HERON COVE II, LLC, AND           *
CALVIN CRITTEN,                   *
                                  *
        Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs United Specialty Insurance Company (**"USIC"**) and Indemnity National Insurance Company (**"INIC"**) file this complaint for a declaratory judgment that they do not owe insurance coverage to their insureds, Arbour Valley Management, LLC and Heron Cove II, LLC, for the claims asserted and damages sought against them in the lawsuit styled <u>Calvin Critten and Brittany Critten v. Arbours Management, LLC, et al.</u>, Civil Action No. CV-2025-900104 in the Circuit Court of Coffee County, Alabama (**"Underlying Suit"**), and that USIC and INIC therefore have no obligation to defend and/or indemnify Arbour Valley Management, LLC and/or Heron Cove II, LLC against the Underlying Suit. This complaint is based on the following:

## JURISDICTION AND VENUE

1.      Plaintiff USIC is a Texas corporation with its principal place of business in Bedford, Texas.

2.      Plaintiff INIC is a Mississippi corporation with its principal place of business in Franklin, Tennessee.

PD\60771024.v1

3.      Defendant Arbour Valley Management, LLC (**"AVM"**) is a limited liability company whose members are Stephen G. Lowitz; David Sumrall; Samuel Johnston; John Moore; and Gabriel Ehrenstein, Trustee.  Lowitz and Ehrenstein are citizens of Florida, and Sumrall, Johnston, and Moore are citizens of Alabama.  Therefore, AVM is a citizen of Florida and Alabama.  See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004).

4.      Defendant Heron Cove II, LLC (**"Heron"**) is a limited liability company whose sole member is David G. Sumrall.  Sumrall is a citizen of Alabama.  Therefore, Heron is a citizen of Alabama.  See id.

5.      Defendant Calvin Critten is a citizen of Alabama.

6.      The amount in controversy exceeds $75,000, excluding interest and costs.

7.      The Court has jurisdiction of this action under 28 U.S.C. § 1332(c), based on complete diversity of citizenship between the Plaintiff and all Defendants, and the amount in controversy exceeding $75,000, excluding interest and costs.

8.      This is a declaratory judgment action brought pursuant to 28 U.S.C. section 2201, et. seq., and Rule 57 of the Federal Rules of Civil Procedure.

9.      Venue in this matter is appropriate pursuant to 28 U.S.C. section 1391.

## THE UNDERLYING SUIT

10.      Defendant Calvin Critten is the father of ██████████████, who at age six drowned in a swimming pool at Heron Cove Apartments in Enterprise, Alabama, on June 27, 2025.  Calvin Critten filed the Underlying Suit against defendants including AVM and Heron.  The "Amended and Restated Complaint" (**"Complaint"**) in the Underlying Suit is attached hereto as Exhibit A.

11.    The Complaint alleges:  Calvin Critten, ▆▆▆▆, and Calvin's wife Brittany were tenants at Heron Cove Apartments. (Exhibit A, p. 3 ¶ 12). The swimming-pool area at the apartments was equipped with gates that were designed with self-locking and closing mechanisms and then modified to include an electronic keycard system designed to allow tenant access and to prevent unsupervised child access. (Exhibit A, p. 3 ¶ 13).  More than one year before June 27, 2025, the electronic keycard control box for the pool gates was struck by a car and damaged. (Exhibit A, p. 3 ¶ 14). The defendants failed to repair or replace the electronic keycard system for more than one (1) year, but instead closed the pool and attempted to use a cable and padlock system to secure the gates. (Exhibit A, pp. 3-4 ¶¶ 15-16 and 18).

12.    The Complaint further alleges:  The defendants were legally obligated to comply with City of Enterprise ordinances, including Article X, Swimming Pool and Spa Code, Section 6-120, which adopts by reference the International Swimming Pool and Spa Code (**"ISPSC"**). (Exhibit A, p. 5 ¶ 37). These regulations require gates that are self-closing and self-latching. (Exhibit A, p. 6 ¶ 38). Section [A]102.3 of the ISPSC requires that the safety devices be properly maintained by the owner or the owner's authorized agent. (Id).  If a building is used as a barrier, all doors and windows opening directly to the pool area must have an exit alarm. (Exhibit A, p. 6 ¶ 39).   The doors also require a self-closing, self-latching device with the latch release at least fifty-four inches above the floor.  (Exhibit A, p. 6 ¶ 40).

13.    The Complaint further alleges:  The defendants failed to comply with the above-described ordinances and allowed dangerous conditions to exist on the property. (Exhibit A, p. 6 ¶ 42).  At the time of ▆▆▆▆ drowning, the self-closing and self-locking mechanisms on the pool gates were not maintained in proper working condition, and the cables used to secure the gates were unreasonably and dangerously loose. (Exhibit A, p. 4 ¶¶ 19-20).   The defendants had

- 3 -

notice that the gates were not secure, that the cables were loose, that the locking mechanisms were non-functional, and that a dangerous condition existed. (Exhibit A, p. 4 ¶¶ 21-24).  Despite this notice, the defendants failed to repair, maintain, or secure the gates and failed to warn invitees of the dangerous condition.  (Exhibit A, p. 4 ¶¶ 25-26).

14.    The Complaint further alleges:  On June 27, 2025, ███████ left his apartment without his parents' knowledge.  (Exhibit A, p. 5 ¶ 28).   Because the pool gates were not secure and the cable was loose and the self-closing and self-locking mechanisms were non-functional, ███████ gained entrance to the pool area, fell into the pool, and drowned.  (Exhibit A, p. 5 ¶¶ 30-31).

15.    The Complaint asserts claims for negligence, wantonness, premises liability, and negligence per se. (See Exhibit A, pp. 6-14).  The claim for negligence per se specifically alleges that the defendants "failed to comply with the ordinances requiring self-closing, self-latching gates" and that the defendants' "violation of the ordinances—by failing to maintain the self-locking mechanism, failing to repair the electronic keycard system, and allowing the gates to remain unsecured—was the proximate cause of ███████ drowning." (Exhibit A, pp. 13-14 ¶¶ 116-123). The Complaint seeks punitive damages for wrongful death.

16.    USIC is currently defending AVM and Heron against the Underlying Suit under reservation of rights.

### THE USIC POLICY

17.    USIC issued a policy of commercial general liability insurance to Arbour Valley Development, LLC as the Named Insured, bearing Policy Number FXZ000641/2500, with effective dates of coverage from February 1, 2025 to February 1, 2026 (**"Policy"**).  A certified copy of the Policy is attached hereto as Exhibit B.

- 4 -

18. The Policy contains an "Additional Named Insureds" endorsement stating that "[t]he named insured is hereby amended to include the following," after which are listed companies, including AVM and Heron.

19. The "Limits of Insurance" stated in the Commercial General Liability Declarations include an "Each Occurrence Limit" of $1 million.

<u>**USIC DOES NOT OWE COVERAGE FOR THE UNDERLYING SUIT**</u>

20. The Policy's Section I – Coverages states:

*COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1. Insuring Agreement*

    *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

        *(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and*

        *(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*

    *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.*

    *b. This insurance applies to "bodily injury" and "property damage" only if:*

        *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" ....*

19. The Policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," and defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

20. The Policy contains an endorsement titled "Limited Coverage For Swimming Pools And Spas," which states:

> *This Endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
>
> A. *This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, use or maintenance of swimming pools or spas unless at the time of the "occurrence" or offense, the following conditions are met:*
>
>> 1. *Swimming pools and spas must have:*
>>
>>> i. *Trained, certified Lifeguards on duty during all hours of operation, or in their absence, prominently displayed signage stating:*
>>>
>>>> 1) *Posted hours of operation; and*
>>>>
>>>> 2) *Lifeguard Not Present, Swim at Own Risk; and*
>>>>
>>>> 3) *Safety and life equipment required by governing regulations and codes is present and available for immediate use; and*
>>>>
>>>> 4) *All other safety and warning notices required by law or ordinance including but not limited to:*
>>>>
>>>>> a. *Water depth markings; and*
>>>>>
>>>>> b. *Diving Prohibited signage*
>>>
>>> ii. *Complete fencing surrounding the swimming pool or spa area with a gate that can be secured when not in use; and*
>>>
>>> iii. *Gates that are self-latching, periodically tested, and appropriately maintained; and*

- 6 -

  *iv.*  <u>*Fences and gates that exceed all governing regulations and codes*</u>*; and*

  *v.*  *Lifesaving equipment that is accessible within the pool and spa area as required by law or ordinance; and*

  *vi.*  *Pools and spas contain anti-entrapment drain covers and fittings conforming to current standards of the Virginia Graeme Baker Pool and Safety Act.*

(Emphases added).

## THE INIC EXCESS POLICY

21. INIC issued a policy of commercial excess liability insurance to AVM as the Named Insured, bearing Policy Number XS0001487 25, with effective dates of coverage from February 1, 2025 to February 1, 2026 ("Excess Policy"). A certified copy of the Excess Policy is attached hereto as Exhibit C. The "Limits of Insurance" stated in the Commercial Excess Liability Declarations include an "Each Occurrence Limit" of $5 million. (Exhibit C, INIC-XS-01 07 20, page 1 of 2).

22. The Excess Policy states that "*Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance*". (Exhibit C, Form CX 00 01 04 13, Section IV - Definitions, ¶ 1, p. 5 of 5).

23. INIC's Excess Policy contains a Schedule of Controlling Underlying Insurance, which references the controlling underlying insurance policy issued by USIC. (Exhibit C, Form INIC-IL-02 07 20).

24. The Excess Policy provides as follows regarding "additional insureds":

> *Any additional insured under any policy of "controlling underlying insurance" will automatically be an additional insured under this insurance. If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "controlling underlying insurance".*

- 7 -

*Additional insured coverage provided by this insurance will not be broader than coverage provided by the "controlling underlying insurance."*

(Exhibit C, Form CX 00 01 04 13, Section I - Coverages, ¶¶ 1.d. p. 2 of 5).

## INIC DOES NOT OWE COVERAGE FOR THE UNDERLYING SUIT

25.    The Excess Policy's Section I – Coverages provides in relevant part, as follows:

*COMMERCIAL EXCESS LIABILITY COVERAGE FORM*

*. . .*

**1.    Insuring Agreement**

**a.**    *We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.*

*We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".*

*When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage". <u>However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this policy does not apply</u>.*

*. . .*

(Exhibit C, Form CX 00 01 04 13, Section I - Coverages, ¶ 1.a. p. 1 of 5).

26.    The Commercial Excess Liability Coverage Form further provides as follows:

*. . .*

*The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this*

- 8 -

> *Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".*

(Exhibit C, Form CX 00 01 04 13, p. 1 of 5).

27.    As set forth in the Complaint, at the time of ▮▮▮▮ drowning, the swimming-pool area at Heron Cove Apartments did not have gates that were self-latching, periodically tested, or appropriately maintained, and/or did not have gates that exceeded (or met) all governing regulations and codes.

28.    In addition, the fence around the pool contained gaps that were wider than permitted by governing regulations and codes; a door inside a building leading to the pool area did not have properly maintained or properly operating self-closing and/or self-latching devices and/or did not have an alarm; and the pool area did not have signage stating "Swim at O▮ Risk."

29.    Because the pool area, at the time of ▮▮▮▮ drowning, did not meet one or more of the conditions set forth in USIC's "Limited Coverage For Swimming Pools And Spas" endorsement, the USIC Policy does not provide coverage for ▮▮▮▮ "bodily injury," and USIC does not owe coverage to AVM or Heron for the Underlying Suit.

30.    By virtue of the follow form language in INIC's Excess Policy, which incorporates the Limited Coverage For Swimming Pools And Spas endorsement from the controlling underlying insurance policy issued by USIC, INIC's Excess Policy does not provide coverage for ▮▮▮▮ "bodily injury," and INIC does not owe coverage to AVM or Heron for the Underlying Suit.

## PRAYER FOR RELIEF

Based on the above, USIC and INIC pray that the Court will declare that USIC and INIC do not owe coverage to AVM or Heron for the claims asserted and damages sought in the Underlying Suit and that USIC and INIC therefore have no obligation to defend and/or indemnify

PD\60771024.v1

AVM or Heron against the Underlying Suit.  USIC and INIC also pray for such other, further, and

different relief as may be warranted, the premises considered.

*S/ A. GRADY "BO" WILLIAMS IV*
A. GRADY "BO" WILLIAMS, IV
WILLIAM E. SHREVE, JR.
Attorneys for Plaintiff United Specialty
Insurance Company

**OF COUNSEL:**
PHELPS DUNBAR LLP
P.O. Box 2727
Mobile, AL  36652
(251) 432-4481
bo.williams@phelps.com
william.shreve@phelps.com

*S/ JOSEPH E. B. STEWART  (w/ express permission)*
WILLIAM A. AUSTILL (1217-A62W)
JOSEPH E. B. STEWART (6903-S61J)
Attorneys for Plaintiff Indemnity National
Insurance Company

**OF COUNSEL:**
AUSTILL, LEWIS, PIPKIN & MADDOX, P.C.
600 Century Park South
Suite 100
Birmingham, AL 35226
(205) 870-3767
b-austill@maplaw.com
jstewart@maplaw.com

Defendants are to be served by personal service by private process server as follows:

Arbour Valley Management, LLC
c/o Samuel Johnson as its Registered Agent
33 Inverness Center Pkwy Ste LL130
Birmingham, AL 35242

Heron Cove II, LLC
c/o David G. Sumrall as its Registered Agent
33 Inverness Center Pkwy Ste LL130
Birmingham, AL 35242

- 10 -

Calvin Critten
202 Plaza Dr Apt 17
Enterprise, Al 36330-3351

PD\60771024.v1